SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *v.* QUO.

1. A railroad company is liable in damages to a female for an assault with intent to commit a rape upon her person by one employed by such railroad company as a baggage-master upon a train on which such female is at the time being conveyed as a passenger.
2. A member of a jury impaneled to try a case is not by this fact debarred from testifying in such case as a witness, if otherwise competent.
3. The verdict is supported by the evidence; and the errors complained of are not sufficient to require the granting of a new trial.

Argued October 26, — Decided November 27, 1897.

Action for damages.    Before Judge Sweat.    Ware superior court.    July 12, 1897.

*Erwin, duBignon, Chisholm & Clay*, for plaintiff in error.
*Toomer & Reynolds*, contra.

Совв, J.    Lula Quo sued the S., F. & W. Railway Company, alleging that on June 13, 1896, while she was a passenger upon the train of the defendant, one Monroe, an employee of the defendant, unlawfully assaulted her and attempted to commit a rape upon her person, and that the defendant was negligent in not protecting her, and in having such employee in its service, it being known to the company that he was notoriously a dissolute and abandoned character.    Upon the trial the evidence was conflicting, but there was evidence in behalf of the plaintiff, which, if credible, established the allegations in her petition.    It appeared from this evidence, that the person committing the assault was a baggage-master on the train, and that he came into the part of the coach in which plaintiff was sitting alone, and, having fastened both of the doors of the car, committed the assault upon her which is the subject-matter of her complaint, and did not desist until some one came to one

of the doors and witnessed what was transpiring in the car. The jury returned a verdict in favor of the plaintiff for two thousand dollars; and the defendant's motion for a new trial being overruled, it excepted.

1. When a contract of carriage is entered into between a passenger and a carrier, there arises out of the relation thus created, not only a duty to safely transport the passenger to the destination fixed in the contract, but also to protect him from injury, violence, insult, and ill treatment at the hands of the servants of the carrier, who are in charge of or connected in any way with the carriage in which the passenger is being transported. 5 Am. & Eng. Enc. L. (2d ed.) 541. This seems to be the settled doctrine of this State. *Western & Atlantic R. Co.* v. *Turner,* 72 *Ga.* 292; *Atlanta & West Point R. Co.* v. *Condor,* 75 *Ga.* 51; *East Tenn., Va. & Ga. Ry. Co.* v. *Fleetwood,* 90 *Ga.* 23; *Cole* v. *Railroad Co.,* 102 *Ga.* 474. While a carrier of passengers owes a duty to all of its passengers to protect them from violence and insult on the part of its servants, it owes an especial duty to female passengers to protect them from insult and abuse. In the case of *Chamberlain v. Chandler,* 3 Mason (U. S.), 242, Judge Story, in discussing the question now under consideration, uses the following language: "In respect to passengers, the case of the master is one of peculiar responsibility and delicacy. Their contract with him is not for mere ship room, and personal existence, on board; but for reasonable food, comforts, necessaries, and kindness. It is a stipulation, not for toleration merely, but for respectful treatment, for that decency of demeanor which constitutes the charm of social life, for that attention which mitigates evils without reluctance, and that promptitude which administers aid to distress. In respect to females, it proceeds yet farther; it includes an implied stipulation against obscenity, that immodesty of approach which borders on lasciviousness, and against that wanton disregard of the feelings which aggravates every evil, and endeavors by the excitement of terror, and cool malignity of conduct, to inflict torture upon susceptible minds. What can be more disreputable, and at the same time more distressing, than habitual obscenity, harsh threats, and immodest conduct, to

delicate and inoffensive females? What can be more oppress-
ive than to confine them to their cabins by threats of personal
insult or injury? What more aggravating than a malicious
tyranny, which denies them every reasonable request, and
seeks revenge by withholding suitable food and the common
means of relief in cases of seasickness and ill health?" In the
case of Nieto v. Clark, 1 Cliff. (U. S.) 145, this decision of
Judge Story was cited with approval by Judge Clifford. While
it is true that in the two cases cited the carrier whose liability
was under consideration was a carrier by water, still the doc-
trine laid down in these cases has been followed in cases where
suits were brought for wrongs of a similar nature inflicted upon
passengers in a railway-carriage. See Craker v. Ry. Co., 36
Wis. 657; Railroad Co. v. Ballard, 85 Ky. 307.

2. One of the jurors impaneled to try this case was called
from the jury-box and placed upon the stand as a witness.
To this proceeding the defendant objected on the ground that
a person who had been selected as a juror in a case was, by
reason of such relation to the case, disqualified to testify as a
witness. It is too well settled to admit of discussion, that a
juror is not incompetent to testify as a witness solely on account
of having been impaneled and sworn in the case, if he is other-
wise competent. Civil Code, § 5337, *Chattanooga, Rome & Co-
lumbus R. Co.* v. *Owen*, 90 *Ga.* 266 (9), and cases cited.

3. There was sufficient evidence to authorize the verdict,
and none of the alleged errors were such as to require the
granting of a new trial.

*Judgment affirmed. All the Justices concurring.*