## A03A1173. HARRIS v. THE STATE.
(589 SE2d 631)

MIKELL, Judge.

A Spalding County jury convicted Palmer A. Harris of burglary, possession of tools for the commission of a crime, interference with government property, and obstruction of an officer. Harris was sentenced as a recidivist to twenty years to serve on the burglary conviction, and the sentences on the remaining convictions, five years, one year, and twelve months, respectively, were to run concurrently with the twenty years. On appeal, Harris challenges the sufficiency of the evidence as to each conviction. We affirm.

Where the sufficiency of the evidence is questioned on appeal, we determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] As an appellate court, we do not weigh the evidence or assess witness credibility.[2]

Reviewed in the light most favorable to the prosecution, the evidence shows that while working the midnight to 8:00 a.m. shift on June 9, 2001, Joel Pitts, a Georgia State Patrol radio operator, heard an unusual noise in the adjacent licensing offices, which were closed for business after 5:00 p.m. When he opened the door to the offices, he saw a man, who immediately ran away. Pitts testified that the perpetrator ran past an adjacent building toward Highway 16. From approximately 150 yards away, Pitts observed that the perpetrator was tall, had an athletic, slim build, and was wearing dark shorts, a dark shirt, and what appeared to be black tennis shoes. Pitts testified that he did not see anything resembling a tool in the perpetrator's hands and could not describe his race.

Pitts called 911 to report the break-in, then investigated the scene. He observed that the deadbolt lock on the door had been broken; that the gum ball machines that normally were inside were destroyed and strewn in the flower bed outside; and that the change collection parts of the machines had been broken. Soon thereafter, the 911 operator called Pitts and advised him that a suspect had been captured and would be brought to the patrol post. Upon seeing the suspect, Pitts could not say that he was the person whom Pitts saw running away, but the suspect's clothes matched those worn by the perpetrator.

Officer Kenneth Haygood of the Spalding County Sheriff's Department testified that he heard the 911 report at about 4:00 a.m.

---

[1] (Punctuation and emphasis omitted.) *State v. Clay*, 249 Ga. 250 (1) (290 SE2d 84) (1982), citing *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Miller v. State*, 208 Ga. App. 547 (1) (430 SE2d 873) (1993).

and began looking for a suspect wearing dark clothing on Highway 16. When he heard the call, he was around the corner from the Georgia Patrol Post. Soon thereafter, Officer Haygood observed a black male subject in dark clothing who was walking westbound on Highway 16 within a quarter of a mile of the Georgia Patrol Post. The subject was not carrying any tools in his hands. Officer Haygood activated his blue lights, stopped his car behind the man, and told him that he needed to talk to him, but the man ran away. Officer Haygood called for backup, located the suspect hiding behind a tree, and watched as he removed items from his pockets. Officer Haygood drew his weapon, told the suspect that he needed to see his hands, and kept his gun on him until other officers arrived. Officer Haygood then arrested Harris, who had to be restrained after trying to run away a second time. After placing Harris in a patrol vehicle, Officer Haygood returned to the area where he apprehended Harris and saw several piles of quarters. Officer Haygood did not find any tools.

Officer Orlando Alexander was employed with the investigative services division of the Griffin Police Department and was the on-call duty investigator when the incident occurred. Upon his arrival at the patrol post, he observed that the door frame was destroyed, the deadbolt lock had pry marks on it, a plastic roll-up tool bag was lying in pine straw near the door, two wrenches were lying near the door, and two of the three gum ball machines were destroyed. When he arrived at the area where the suspect had been apprehended, he found four piles of quarters under some vegetation and another large pile of quarters behind a pine tree, all of which he secured as evidence. Officer Alexander testified that he found a total of 169 quarters, amounting to $42.25, and that there were no other denominations of coins at the scene.

Harris denied that he committed the burglary. Harris explained that on the night in question, he was riding around with a man he knew as "Hoola-Hoop," who had taken him to buy some drugs earlier that evening. Harris testified that after he smoked the last of the crack cocaine they purchased, Hoola-Hoop stopped the car and told him to get out. Harris was walking home when the police car stopped behind him, and he ran away because he wanted to discard the drug paraphernalia in his pocket. Harris was wearing a black shirt, black shorts, white socks, and light brown boots when he was arrested.

On redirect examination, Officer Alexander testified that he did not find drug paraphernalia in the area where Harris was arrested and that Harris did not mention Hoola-Hoop when he gave his initial statement to the officer. On recross, Officer Alexander admitted that he did not check the surrounding area and could have missed the drug paraphernalia.

"Only where the evidence is insupportable as a matter of law

may the jury's verdict be disturbed, even where the evidence is circumstantial."[3] To support a conviction, circumstantial evidence must exclude every reasonable hypothesis except the guilt of the accused, not remove every possibility of the defendant's innocence.[4] Given the evidence that Harris's clothing and physical description matched that observed by Pitts;[5] that Harris was near the area when the crime occurred; that he ran from police and hid behind a tree where he was seen removing items from his pocket; and that 169 quarters were found in the immediate vicinity of the tree where Harris was apprehended, we cannot say that the jury's verdict is insupportable. Though Harris did not possess the tools used to commit the crime at the time he was apprehended, the jury was authorized to infer from the description of the crime scene, including the presence of the tools, the pry marks on the door and the condition of the door, as well as the fact that Harris was apprehended in the same area where the quarters were found, that Harris broke into the government facility with the tools found at the scene, destroyed the gum ball machines, stole the coins out of the machines, and fled the scene with the quarters in his pockets.

Harris offered an alternative explanation for his presence near the scene of the crime, which must be taken into consideration to the extent that it is consistent with the properly admitted circumstantial evidence.[6] However,

> [w]hether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused, is primarily a question for determination by the jury. This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. After having heard the witnesses and having observed them testify, they are more capable of judging of the reasonableness of a hypothesis produced by the evidence, or the lack of evidence, and the defendant's statement, than is a court of law.[7]

---

[3] (Citation omitted.) *Wilson v. State*, 230 Ga. App. 271, 273 (2) (495 SE2d 894) (1998).

[4] *McConnell v. State*, 235 Ga. 366 (220 SE2d 5) (1975), citing *Eason v. State*, 217 Ga. 831, 840 (2) (125 SE2d 488) (1962). Accord *Jerdine v. State*, 137 Ga. App. 811, 812 (1) (224 SE2d 803) (1976).

[5] See generally *Gresham v. State*, 246 Ga. App. 705, 707 (2) (541 SE2d 679) (2000) (criminal conviction can be based on an eyewitness's general description of the perpetrator).

[6] *Head v. State*, 169 Ga. App. 947, 949 (315 SE2d 669) (1984).

[7] (Citations and punctuation omitted.) *Bogan v. State*, 158 Ga. App. 1, 2-3 (279 SE2d 229) (1981).

The jury obviously did not believe Harris's explanation and was not required to do so.[8] Accordingly, we find that the evidence was sufficient to support Harris's convictions for burglary, possession of tools for the commission of a crime, and interference with government property.[9] Additionally, as we have held that the act of running from an officer is sufficient evidence to support a conviction for misdemeanor obstruction of an officer,[10] that conviction is affirmed as well.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 4, 2003.

*Sullivan, Sturdivant & Ogletree, Harold A. Sturdivant, Michele W. Ogletree*, for appellant.

*William T. McBroom III*, District Attorney, *Daniel A. Hiatt*, Assistant District Attorney, for appellee.

---

[8] See *Tanksley v. State*, 226 Ga. App. 505, 506 (487 SE2d 98) (1997).
[9] See *Jackson v. Virginia*, supra.
[10] *Wilder v. State*, 243 Ga. App. 807, 808 (4) (534 SE2d 487) (2000).